UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAJ NACHAR, | ) | CASE NO. 1:11CV597 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| PNC BANK, NATIONAL ASSOC., | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter is before the Court on Defendant's Motion for Summary Judgment as to Plaintiff's claims regarding an alleged loan modification and Defendant's Counterclaim for Mortgage Foreclosure (ECF#30).  For the following reasons, the Court grants Defendant's Motion for Summary Judgment on all of Plaintiff's claims and Defendant's Counterclaim, as there is no genuine issue of material fact for trial and Defendant is entitled to judgment as a matter of law.

FACTS

The following facts are not in dispute.  In March 2003, John Nachar, who was then the Plaintiff's husband, took out a loan ("Loan") from National City Real Estate Services on the property located at 27478 Cottonwood Trail, North Olmsted, Ohio 44070 ("Property") (Pl. Compl. 6, Def. Motion for Summary Judgment 3).  While John Nachar was the only person on the Note, both he and Plaintiff signed the Mortgage (Pl. Compl. 7-8).  Pursuant to the terms of the Note, John Nachar was required to pay $829.39 in principal and interest on the first day of each month beginning May 1, 2003 through the April 1, 2010 maturity date (Def. Mot. 2).  PNC Bank, National Association

("PNC") subsequently acquired physical possession of the Note and Mortgage upon merger with National City Bank on November 6, 2009.  (Def. Mot. 6 n.2).

The last mortgage payment was made in October 2008 when John Nachar moved out of the Property (Def. Mot. 4).  In March 2009, the couple divorced and Plaintiff was awarded the Property in the Separation Agreement (Def. Mot. 3).  Under the Divorce Decree, John Nachar quit-claimed the property to Plaintiff, and Plaintiff was required to refinance the Mortgage in her own name (Def. Mot. 3).  John Nachar filed for bankruptcy under Chapter 7 in 2010 and subsequently obtained a discharge without reaffirming the debt evidenced by the Note (Def. Mot. 7 n.3).

In February 2009, National City filed a foreclosure action against Plaintiff and others, including John Nachar (Pl. Compl. 10).  Plaintiff contacted National City two months later requesting a loan modification (Pl. Mem. in Opp'n to the Mot. for Summ. J. 2).  After the merger, PNC told Plaintiff she could not modify the loan in her name because she was not on the Note; but a modification in John Nachar's name, if approved, could bring the Loan current and Plaintiff could then be considered for an assumption based on her own qualifications (Taj Nachar Dep. 70:14-71:11, Feb. 14, 2012) (Def. Mot. 3).  Plaintiff submitted financial documentation to PNC regarding her own economic status several times between 2009 and 2010 (Pl. Mem. 2, 3).  In 2009, Plaintiff filed a request for foreclosure mediation, and the Foreclosure Mediation Department conducted mediations on October 20, 2009, December 11, 2009, and January 20, 2010 (Pl. Mem. 3).

After the January 20 mediation, a Home Affordable Modification Program ("HAMP") Trial Modification Plan ("TMP") was generated and forwarded to John Nachar with trial payments due on January 1, February 1, and March 1, 2010 (Ex. 2 to Dep. of Taj Nachar).  Plaintiff discussed the Trial Plan with PNC representatives via telephone to find out if completing the Trial Plan would result in a

Loan modification in her name (Def. Mot. 4).  She was not given a definitive answer to that question.  *Id*.  John Nachar signed and returned the Trial Plan document on January 27, 2009 along with a Financial Information Summary based on Plaintiff's income (Pl. Mem. 5) (Ex. F. to Dep. of Taj Nachar).  The TMP reads in pertinent part that the Borrower (John Nachar) is entitled to a Loan modification:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement")...(Ex. E to Dep. of Taj Nachar).

The following are additional excerpts from the TMP:

> This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.  *Id.*
>
> F.  If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement...the Loan Documents will not be modified and this Plan will terminate.  *Id.*
>
> G.  I understand the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement...  *Id.*

Plaintiff made the January and February Trial Plan payments of $907.68 on February 8, 2010 and subsequently made four more Trial Plan payments (Def. Mot. 4).

On January 25, 2010 the Cuyahoga County Court of Common Pleas issued a journal entry stating: "Case called for full mediation. . . .  The parties were able to reach a full agreement on a HAMP modification."  *Id*. at 5.  The Court subsequently dismissed the foreclosure proceedings.  *Id.*

PNC sent Plaintiff written notification that the HAMP modification had been denied on February 15, 2010 for failure to make all of the required Trial Plan payments (Aff. of Taj Nachar, Ex.

3

3).  PNC sent a second denial notice on June 7, 2010 for failure to provide the requested documents. *Id.* Ex. 5.  Plaintiff sent PNC additional financial information on July 26, 2010 (Dep. of Taj Nachar, Ex. F).

Plaintiff filed a Complaint against PNC on February 23, 2011, asserting claims for Breach of Contract, Specific Performance, Breach of Settlement Agreement, Promissory Estoppel, Equitable Estoppel, and Breach of the Implied Covenants of Good Faith and Fair Dealing, all relating to the Loan modification.  In its Answer, Defendant brought a Counterclaim for Mortgage Foreclosure.

## LAW AND ANALYSIS

**Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005).  The initial burden to demonstrate the absence of a genuine issue of material fact rests with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "When a motion for summary judgment is properly made and supported" the initial burden shifts to the opposing party, who "may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).  The "mere existence of some  alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004);

*Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). A fact is material only if its resolution "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). "Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, the Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute. *Anderson*, 477 U.S. at 249-250.

## DISCUSSION

### I. The HAMP Program

HAMP is an administrative program created pursuant to the Emergency Economic Stabilization Act of 2008. To participate in HAMP, mortgage servicers execute a Servicer Participation Agreement ("SPA") with the Federal National Mortgage Association ("Fannie Mae") in its capacity as financial agent for the United States. *Costigan v. CitiMortgage, Inc.*, No. 10-civ-8776SAS, 2011 WL 3370397, at *1 (S.D.N.Y. Aug. 2, 2011). The HAMP Program was further summarized in *Ortega v. Wells Fargo Bank, N.A*, 3:11CV01734, 2012 WL 275055,

at *4 (N.D. Ohio Jan. 31, 2012)**:**

> The purpose of the Home Affordable Modification Program ("HAMP") is to promote loan modification and foreclosure prevention services. Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives. The [trial plan] allows a mortgagor to make reduced payments for a three-month trial period; it does not modify the underlying mortgage and its obligations. Instead, the mortgagor incurs a voluntary and short-term default in exchange for an evaluation that may or may not result in a permanent modification. *Id.*

While it is well established that there is no private cause of action under HAMP (*Id*. at *7), in the instant case, Plaintiff does not allege a violation of the HAMP guidelines or policies but alleges violations of state contract law.

## II. Plaintiff's Claims

### A. Count I, Breach of Contract and Count III, Breach of Settlement Agreement

Under Ohio Law, to prevail on a breach of contract claim, a plaintiff must prove: (1) the existence of a binding contract; (2) that the nonbreaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages as a result of the breach. *Baghani v. Charter One Bank F.S.B.*, No. 91373, 2009 WL 280399, ¶ 13 (Ohio Ct. App. Feb. 5, 2009). The enforceability of a settlement agreement is a matter of contract law. *Continental W. Condominium Unit Owners Assn. v. Ferguson*, 74 Ohio St. 3d 501, 502 (1996); *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir.1992).

"A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration, . . . a manifestation of mutual assent and legality of object and of consideration.

A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Artisan Mech., Inc. v. Beiser*, No. CA2010-02-039. 2010WL4514275, at* 4 (Ohio Ct. App. 2010).  Plaintiff relies on oral discussions which took place during the mediation on January 20, 2010, the TMP and the Servicer Participation Agreement to establish the elements and existence of an enforceable contract.

Plaintiff cannot prove the existence of an enforceable contract based upon discussions during the January 20, 2010 mediation because any and all discussions during mediation are absolutely privileged and cannot be introduced to argue that an enforceable contract was reached. Subject to certain exceptions which are inapplicable in the present case, communications exchanged in mediation are confidential and are neither discoverable nor admissible.  R.C. 2710.03.  Moreover, a "mediation party may refuse to disclose, and may prevent any other person from disclosing, a mediation communication." R.C. 2710.03(B)(1).  PNC has not agreed to waive confidentiality protections afforded to these communications.  As a result, Plaintiff is barred from offering her understanding of what occurred during the mediation in an effort to enforce a contract against PNC.

Even if the oral conversations from the January 20, 2010 mediation were admissible, Plaintiff's breach of contract claim fails under the Statute of Frauds.  Under the Statute of Frauds, an agreement concerning an interest in real estate is unenforceable unless such agreement is reflected in a signed writing, signed by the party charged, and containing all essential terms of such agreement.  R.C. 1335.05; *Lamkin v. Frist Cmty. Bank*, No. 00AP-935, 2001 WL 300732, at *8-9 (Ohio Ct. App. Mar. 29, 2001).  As such, Plaintiff cannot rely on the January 20th conversations to enforce an oral agreement to modify loan documents, as there is no signed

writing memorializing their contents.  Plaintiff relies on a journal entry, entered by the Cuyahoga County Court of Common Pleas on January 25, 2010, stating that the parties were able to reach a HAMP agreement, as the basis of her claim.  However, the journal entry does not state the essential terms of the agreement nor is it signed or even acknowledged by PNC.  As such, her breach of contract claim fails based on the January 20, 2010 mediation discussion and the Common Pleas Court's subsequent journal entry.

  Plaintiff also asserts a breach of contract claim based upon the TMP.  The TMP is a document which bears the name and signature of only John Nachar.  As such, Plaintiff lacks standing to assert breach of contract claims based upon an agreement to which she was not a party.  Even if Plaintiff could establish standing based upon the TMP; the document, by its plain language, indicates that it is not an offer of a permanent modification.  The TMP specifically states that it is not a modification of the Loan documents, and further stipulates that if the Servicer does not provide a fully executed copy of the TMP and separate Modification Agreement, the Loan documents will not be modified and the TMP will terminate.  Prior to expiration of the trial period, PNC sent Plaintiff written notification that she was in default of the TMP, and did not send Plaintiff or John Nachar an executed copy of the TMP or a separate Modification Agreement.  As such, Plaintiff has failed to establish the existence of a contract pursuant to the TMP, since it was not an offer of permanent modification.

  Plaintiff argues that a breach of contract claim arises pursuant to the Servicer Participation Agreement ("SPA") between PNC and Fannie Mae as part of the HAMP program, and asserts that she has standing under this contract as a third-party beneficiary.  This argument fails, however, as courts that have considered the argument that a borrower can claim third-party

8

beneficiary status to an SPA, and premise a breach of contract or promissory estoppel claim on an SPA, have rejected that argument. *See, e.g.*, *CitiMortgage, Inc. v. Carpenter*, No. 24741, 2012 WL 1079807, at *3 (Ohio Ct. App. March 30, 2012) (holding "most courts have found that borrowers do not have standing to enforce the terms of HAMP as third-party beneficiaries.").

Plaintiff has failed to establish the existence of an enforceable contract based upon oral discussions, the TMP or the SPA. Accordingly, the Court grants PNC's Motion for Summary Judgment with respect to Counts I and III.

**B. Count II, Specific Performance and Count VI, Breach of the Implied Covenants of Good Faith and Fair Dealing**

Without an enforceable underlying contract, the plaintiff's Specific Performance (Count III) and Breach of the Implied Covenants of Good Faith and Fair Dealing (Count IV) claims fail as a matter of law. The Supreme Court of Ohio has held that "in order for an action in specific performance to be maintainable, there must exist a contract which is valid and mutually binding upon both parties thereto." *Source Associates, Inc. v. Valero Energy Corp.*, No. 1:05cv2526, 2007 WL 1235997, at *4 (N.D. Ohio Apr. 6, 2007), *aff'd*, 273 F.App'x. 425 (6th Cir.2008) (citing *Bretz v. The Union Central Life Ins. Co.,* 134 Ohio St. 171, 177 (1938)).

Further, Ohio law does not recognize a claim for breach of the implied covenants of good faith and fair dealing independent of a breach of contract claim. *Mortgage Elec. Registration Sys., Inc. v. Mosley*, No 93170, 2010 WL 2541245, at *11 (Ohio Ct. App. June 24, 2010). The covenant of good faith "is part of a contract claim, and does not stand alone as a separate cause of action." *Tabor Revocable Trust v. WDR Properties, Inc.*, No. 2009-L-118, 2010 WL 1840738, at *6 (Ohio Ct. App. May 7, 2010); *Wendy's Intern., Inc. v. Saverin,* 337 F.App'x 471, 476 (6th Cir.

2009); *Lakota Loc. School Dist. Bd. of Edn. v. Brickner,* 108 Ohio App. 3d 637, 646 (1996). Here, since an enforceable contract was not formed, the claims for specific performance and breach of the implied covenant of good faith and fair dealing fail; and the Court grants PNC's Motion for Summary Judgment with respect to Counts II and VI.

### C.  Count IV, Promissory Estoppel

Promissory estoppel is not an affirmative defense against the statute of frauds, but allows a separate remedy for damages in the absence of an enforceable contract.  *Olympic Holding Co. L.L.C., v ACE Ltd.*, 122 Ohio St. 3d 89 (2009).

In order to prove promissory estoppel under Ohio law, a plaintiff must demonstrate the following elements:  (1) a promise, clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise is made; (3) such reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance.  *Bluegrass Ctr., LLC v. U.S. Intec, Inc.*, 49 F.App'x 25, 31-32 (6th Cir. 2002); *Patrick v. Painesville Commercial Properties, Inc.,* 123 Ohio App. 3d 575, 583 (1997).

Plaintiff argues that PNC promised to approve a permanent loan modification in Plaintiff's name, or alternatively, that PNC agreed to review Plaintiff for a loan modification. The facts show that PNC did review Plaintiff for a loan modification.  Plaintiff acknowledges numerous occasions on which she and PNC discussed her situation and her financial information as it related to the loan modification.  She was told that, based on her information, she qualified for participation in the HAMP trial plan, subject to the fulfillment of further conditions.  PNC's review of the modification application in no way ensured the approval of that loan modification, which is clearly stated in the TMP.  Plaintiff cannot base a claim for promissory estoppel on

PNC's promise to review her for a loan modification because PNC fulfilled that obligation even if they did not ultimately approve the application.

Plaintiff fails to establish that PNC promised to approve a permanent loan modification in her name.  A promise to modify a loan agreement is not clear and unambiguous when additional information is needed to confirm qualification in the program.  In *Kaiser v. CitiMortgage, Inc.*, No. 3:11cv1428, 2011WL4699355, at *3-5 (N.D. Ohio Oct. 6, 2011), plaintiffs alleged CitiMortgage promised to provide a mortgage modification if they made trial payments under the HAMP program.  The District Court found no clear promise when the lender required additional documentation to evaluate plaintiffs' financial situation.  *Id.*  (The court held, "Plaintiffs' factual allegations that they first had to start regular payments *and* submit supporting documentation to enable CitiMortgage to evaluate their financial status belie any claim that modification was assured.").

In the instant case, Plaintiff acknowledges PNC required her to submit financial information in addition to making the trial payments as part of the TMP.  Under the *Kaiser* standard, Plaintiff has not established the existence of a clear and unambiguous promise.  Additionally, the TMP itself states by its plain language that it is not a guarantee of a loan modification and contains several conditions that would allow termination.  Finally, Plaintiff acknowledges that PNC provided conflicting information to her as to whether the loan *could* be modified in her name since she did not appear on the Note.  Under these circumstances, it is clear that PNC did not make a clear and unambiguous promise to modify the loan in Plaintiff's name.  Accordingly, the Court grants PNC's Motion for Summary Judgment as to Count IV.

### D. Count V, Equitable Estoppel

Plaintiff's claim for Equitable Estoppel fails as a matter of law, because under Ohio law, equitable estoppel is a defense and not an independent cause of action. *Lopardo v. Lehman Bros., Inc.*, 548 F. Supp. 2d 450, 468 (N.D. Ohio 2008). "[E]stoppel is, according to the usual statement, a shield, not a sword. It does not furnish a basis for damages claims, but a defense against the claim of the stopped party." *First Fed. Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc.*, 11 Ohio App. 3d 135, 144 (Ohio Ct. App. 1983). Accordingly, the Court grants PNC's Motion for Summary Judgment with respect to Count V.

### E. PNC's Counterclaim for Mortgage Foreclosure

PNC asserts a Counterclaim against Plaintiff for Mortgage Foreclosure. Although Plaintiff did not question PNC's standing to foreclose on the Note or Mortgage in her Motion in Opposition to Summary Judgment, the issue is raised by the fact that the Note was discharged in bankruptcy and not reaffirmed.

The Court finds that, pursuant to Ohio law, PNC has standing to foreclose upon the Property even though Plaintiff did not sign the Note. *See PNC Mtge. v. Innis*, No. CA2010-10-013, 2011WL5146044, at *2 (Ohio Ct. App. Oct. 31, 2011) (holding the fact that wife signed the mortgage but did not sign the note is of no consequence to the bank's ability to foreclose on the property). Ohio courts have found that, though a note is discharged in bankruptcy, the mortgage, being security for the note, is still effective.

> [The mortgagee] has no cause of action on the promissory note. . . . [h]owever, the mortgage, being security for the note, is still effective. . . . it remains as security for the rights of creditors with valid mortgage liens. Thus, [the mortgagee] is entitled to an action in foreclosure of the mortgage lien as it is not affected by the discharge in bankruptcy of the underlying debt. *Seabrooke v.*

*Garcia*, 7 Ohio App. 3d 167, 168 (1982).

Although PNC has standing to foreclose on the mortgage, Plaintiff asserts several affirmative defenses in her Answer to the Counterclaim for Mortgage Foreclosure. Under Ohio law, defendants to a claim are not required to conclusively demonstrate their case, but to produce only enough evidence to show that there is a genuine issue of material fact. If defendants do not do so, the court may grant summary judgment in favor of plaintiffs. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St. 3d 461, 465 (2008). Further, the burden of pleading and proving any affirmative defense is on the defendants. *Id.*

While plead only in her Answer to the Counterclaim and not asserted in her Motions, Plaintiff's affirmative defenses that no monetary or deficiency judgment can be enforced against her should be well taken; however, these claims will not defeat PNC's Motion for Summary Judgment. Under Ohio law, "discharge in bankruptcy removes personal liability on the note, but the mortgage remains effective as security on the note." *Bank One, NA v. Dillon*, No. 04CA008571, 2005 WL 956966, at *2 (Ohio Ct. App. Apr. 27, 2005) (quoting *Seabrooke v. Garcia*, 7 Ohio App.3d 167, 168 (1982)); *see also In re Sams*, 16 B.R. 47, 49-50 (Bankr. N.D. Ohio 1981) (holding "the discharge serves only to protect the Bankrupt against personal liability for a 'deficiency'. . . . Plaintiff's discharge in bankruptcy did not *per se* preclude defendant from 'foreclosing' its chattel mortgage by replevin."). As such, while PNC may prevail on its Motion for Summary Judgment to foreclose on the mortgage, Plaintiff is not personally liable for the Note.

Plaintiff fails to plead any facts which would create a genuine issue of fact for the affirmative defenses of Unclean Hands, Homestead Exemption, Unconscionability, Truth in

Lending Act Violations, or Promissory Estoppel.  The Court consequently finds in favor of PNC on its Motion for Summary Judgment with respect to the Counterclaim for Mortgage Foreclosure, although finding that PNC cannot enforce monetary or deficiency judgments against Plaintiff.  The Court further orders PNC to submit a Proposed Judgment Entry for Foreclosure per the Court's General Order 2006-16 within thirty days.

    **IT IS SO ORDERED.**

                                        s/ Christopher A. Boyko
                                        **CHRISTOPHER A. BOYKO**
                                        **UNITED STATES DISTRICT JUDGE**

**DATED:  October 5, 2012**